# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# STATESBORO DIVISION

| | | |
|---|---|---|
| ERVIN MINCEY, | ) | |
| Movant, | ) ) ) | |
| v. | ) ) | Case No. CV609-003 |
| UNITED STATES OF AMERICA, | ) ) | [CR605-031] |
| Respondent. | ) ) | |

## REPORT AND RECOMMENDATION

Convicted and sentenced to 360 months' imprisonment for distribution of crack cocaine in violation of 21 U.S.C. § 841(a)(1), Ervin Mincey unsuccessfully appealed, *United States v. Mincey*, 260 F. App'x 227 (11th Cir. 2007), and now moves, over the government's opposition, for 28 U.S.C. § 2255 relief. CR605-031, doc. 102 (§ 2255 motion), *as amended*, doc. 105 (attach.); docs. 106, 108 (responses). The motion should be denied.

Following his arrest for selling cocaine to an informant, Mincey was arraigned, where he requested the assistance of counsel. *Mincey*, 260 F. App'x at 229. But Mincey later initiated an interview with Agent

Kent Munsey. Munsey videotaped it. On it Munsey asks, "So what's up?"

> When Mincey began talking, Agent Munsey stopped him to read him his *Miranda* rights. Munsey paused after each one and asked Mincey if he understood. Mincey never indicated that he did not understand nor that he wished to invoke his right to the presence of counsel, nor did he ever request to terminate the interview. Mincey indicated that he was interested in finding out how he could cooperate with police investigations to lower his own sentence, and he freely discussed his knowledge of and experience in the drug trade.

*Id.* at 229.

The government used Mincey's interview statements against him at trial. Doc. 91 at 181-85. Mincey unsuccessfully moved this Court to suppress those statements, doc. 37, 47, and argued on appeal that this Court erred by ruling against him. *Mincey*, 260 F. App'x at 228. Mincey, said the appellate court,

> never indicated that he did not understand or that he wished to invoke right to presence of counsel, and he never asked to terminate interview, he indicated he was interested in finding out how he could cooperate with police investigations to lower his sentence, and he freely discussed his knowledge of and experience in drug trade.

*Id.* at 228. Nor did he allege that he was subjected to any physical or psychological pressure, claim that the interview was unduly long, or offer

2

any evidence that Agent Munsey coerced or deceived him. *Id.* Finally, the Court of Appeals reasoned, in denying this claim,

> Mincey testified that he did not understand the nature of his *Miranda* rights, and that he "thought [Agent Munsey] was like an attorney." However, Mincey had seven prior arrests and four felony convictions, and therefore, he was "no novice to law enforcement procedures." *United States v. Gaddy*, 894 F.2d 1307, 1312 (1990). More importantly, when asked by the government if he discussed his involvement in the drug trade with Agent Munsey, Mincey replied, "I ask for my Fifth Amendment on that." Given Mincey's background and conduct at trial, the district court did not err in concluding that Mincey had the requisite knowledge of his rights and knowingly waived his right to counsel during the videotaped interview.

*Id.* at 229.

Mincey's § 2255 motion simply rehashes his appellate argument, *see* doc. 102 at 1-2 (his § 2255 motion challenging his taped statements); doc. 104-1 at (screen page) 23-30 (his appellate brief doing the same).[1] Direct-appeal claims need not be reconsidered here. *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000), cited in *Thomas v. United States*, 572 F.3d 1300, 1304 (11th Cir. 2009) (law of the case doctrine

---

[1] This Court has broad discretion to determine whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations ... or supported by different legal arguments ... or couched in different language ... or vary in immaterial respects"). *United States v. Johnson*, 2010 WL 2220306 at * 3 (N.D. Fla. May 11, 2010).

3

operates to preclude courts from revisiting issues that were decided explicitly or by necessary implication in prior appeal).

Note that *Thomas* did not illuminate the dividing line between motions that bring the "same claim, different day" (hence, deny it) versus a materially different claim (hence, consider it). But *Nyhuis* provides useful guidance: "We can discern no fact or other evidence underlying the present due process claim which was not raised by Nyhuis [on direct appeal] and [thus] considered by us in his prior immunity claim." *Nyhuis*, 211 F.3d at 1343. Also, "Nyhuis has merely re-characterized his prior immunity claim as a due process claim. A rejected claim does not merit rehearing on a different, but *previously available*, legal theory." *Id.* (emphasis added); *Jones v. United States*, 2009 WL 3483400 at * 2 (S.D. Ga. Oct. 28, 2009).[2] The same must be said here on

---

[2] Repeating a previously raised claim triggers the law of the case doctrine. Raising a claim that should have been previously raised but was not triggers the procedural default doctrine. In that case,

> [a]bsent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is actually innocent. To show cause for procedural default, a defendant must show that some objective factor external to the defense prevented him or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to defendant's own conduct. A meritorious claim of ineffective assistance of counsel [IAC] can constitute cause. [IAC] claims are

4

this claim, for which Mincey raises no cause, *see* doc. 102 at 1-2; doc. 105, so it is denied.

Mincey next challenges the sufficiency of the evidence against him. Doc. 102 at 2-3. He did not raise this claim on appeal, which means that it is procedurally defaulted. *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir.2004); *see United States v. Frady*, 456 U.S. 152, 167 1982). Mincey thus must establish cause for not raising it on direct appeal and actual prejudice from the alleged error; or he may show a fundamental miscarriage of justice. *Lynn*, 365 F.3d at 1234.

Evidently cognizant of that, Mincey couches this issue within IAC[3] and actual innocence claims, then insists that he never sold the cocaine

---

    generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.

*United States v. Johnson*, 2010 WL 2220306 at * 3 (N.D. Fla. May 11, 2010) (quotes, cites, and alterations omitted); *United States v. Muhammad*, 2010 WL 2465524 at * 2 (S.D. Ala. June 15, 2010); *Jones*, 2009 WL 3483400 at * 2 n. 5.

[3] In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court created a two-part test for determining whether counsel's assistance was ineffective. First, the movant must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* Second, he must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. *Id.*

    Under the performance prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. The movant carries a heavy burden, as

to the informant. Hence, "counsel should have challenged both the testimony of [the informant, Gantry] Habersham both during trial and by providing a voice analyst[,] and also requiring that Habersham's wife be called in order to clarify the testimony of her husband." Doc. 105 at 6; *see also* doc. 95 at 25-26. Had counsel properly investigated his claim of innocence, he contends, "the evidence relied upon by the government would have been insufficient to sustain his conviction." Doc. 105 at 6.

Turning to the latter half of Mincey's argument first, Mincey fails to even hint at what sort of exculpatory or impeaching evidence could

---

"reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the [movant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. Indeed, the movant must show that "no competent counsel would have taken the action that his counsel did take." *Ford v. Hall*, 546 F.3d 1326, 1333 (11th Cir. 2008) (quoting *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)). The prejudice prong requires movants to establish that there was a reasonable probability that the results would have been different but for counsel's deficient performance. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Strickland*, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Lightbourne v. Dugger*, 829 F.2d 1012, 1022 (11th Cir. 1987); *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1983).

Finally, self-serving and conclusory IAC claims merit no hearing, much less § 2255 relief. *See Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001); *see also United States v. Laetividal-Gonzalez*, 939 F.2d 1455, 1465 (11th Cir. 1991) (no hearing required where movant's allegations fail to satisfy the prejudice prong of the *Strickland* test); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (no hearing required on claims "which are based on unsupported generalizations"); *Rodriguez v. United States*, 473 F.2d 1042, 1043 (5th Cir. 1973) (no hearing required where petitioner alleged no facts to establish truth of his claims beyond bare conclusory allegations).

have been obtained from Habersham's wife. He cannot rest on speculation, conclusory assertions, or the mere suggestion that something *might* have been discovered underneath a newly turned stone. *See Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001) (citing *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991)). Thus, this part of his argument fails outright.

As for the first half of his argument, Mincey fails to make any sort of showing (other than his mere denial) that a voice analysis would show he is *not* behind the voice on that tape. He tenders, for example, no sworn affidavit attesting that the taped voice is not his, and he is reminded that he must not falsely swear here. *See, e.g., United States v. Dickerson*, No., CR608-36, doc. 1 (S.D. Ga. Dec. 11, 2008) (indictment charging inmate with violating 18 U.S.C. § 1623(a) by knowingly lying under oath in a § 2255 motion that he was not present during his 2006 criminal trial during jury selection); *id.*, doc. 47 (guilty verdict).

For that matter, his counsel may be said to have made a reasonable, strategic decision to not expend resources on taped-voice analysis where it was apparent that (and in fact this unfolded at trial) the informant himself would identify Mincey, doc. 91 at 107-08, and that

7

Mincey himself would supply self-identification evidence in the form of his *own* taped statements to agent Muncey (hence, the jury could handily compare his voice on the two tapes). Movant simply has not shown that "no competent counsel would have taken the action that his counsel did take." *Ford*, 546 F.3d at 1333. Thus, this claim, too, must be denied.

Mincey also argues that under 21 U.S.C. § 841, "the crime [must be shown to have been] committed with, [sic] more than minimal planning," and that "[a]ll transcripted [sic] testimony proves the opposite of the necessary sophistication that would be required by lawful use." Doc 102 at 3. This argument also fails. The "planning" requirement comes from a sentencing guidelines enhancement for fraud-base crimes, *United States v. Jarrard*, 301 F. App'x 839, 843 (11th Cir. 2008), and has nothing do to with this case, where Mincey received no such sentence enhancement but in fact was sentenced as a career offender. PSI ¶¶ 12-22 (noting the drug quantity, but since career offender status supported a higher offense level under U.S.S.G. § 4B1.1, that level was adopted).

Mincey next argues that he received ineffective assistance of trial and appellate counsel based upon counsel's failure to limit the drug attribution amount at sentencing to 27.72 grams of cocaine base -- the

amount he sold to Habersham. Doc. 105 at 9-13. He insists that the amount attributed to him (736.47 grams) was not reasonably foreseeable, and that sentencing guidelines used to reach 736.47 grams require he be shown to be part of a conspiracy, for which he was never charged. *Id.* at 9-10. Too, individualized findings must be made, and that was never done here. *Id.* Again, Mincey was sentenced as a career offender, and not based on the drug guidelines. That makes this "proper amount" issue irrelevant and the claim itself baseless. *See also Mincey*, 260 F. App'x at 230 (affirming reasonableness of sentence on appeal).

Mincey next argues that his retained appellate counsel was ineffective for failing to petition the *Mincey* court for rehearing, then file a petition for writ of certiorari with the U.S. Supreme Court. Doc 105 at 13-18. He cites the Criminal Justice Act, 18 U.S.C. §3006A, and the implementing plans requiring such counsel to do this if requested by the represented defendant. *Id.* at 13-14. However, he overlooks the fact that he enjoyed *retained*, not CJA-appointed counsel on appeal. Thus, the CJA does not apply. Nor does Mincey show any prejudice (i.e., that some right or benefit was lost by not further appealing past the panel opinion).

9

The remainder of Mincey's claims are similarly without merit.[4] Since he has failed to present facts which, if true, would warrant an evidentiary hearing, his request (doc. 105 at 15-16) for one is **DENIED**.

Accordingly, Ervin Mincey's 28 U.S.C. § 2255 motion, doc. 102 (§ 2255 motion), *as amended*, doc. 105, as well as his request for an evidentiary hearing, doc. 105 at 15, must be **DENIED**. Applying the Certificate of Appealability ("COA") standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009) (unpublished), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving sua sponte denial of COA before movant filed a notice of appeal). And, since there are no non-frivolous issues to raise on appeal, an appeal would not

---

[4] Otherwise procedurally defaulted, these claims are best characterized as a generalized rant about the sufficiency (the "quality") of evidence used to convict him. He insists that "[a]ll testimony relies on illegally and abusively obtained interrogations, and assumed, not actually confiscated, drug weights." Doc. 102 at 2. This is simply a rehash of the above-denied suppression and sentencing issues. He also complains that his conviction unfairly rests upon the "testimony of the confidential informant or the co-defendant, [which] does not prove substantive or credible." Doc. 102 at 2. Finally, "[t]he testimony of desperate individuals, whom faced criminal liabilities of their own, cannot be considered reliable, by the standards of law." *Id.* at 3. All of this, of course, is simply jury argument, *see, e.g., United States v. Mills*, 271 F. App'x 886, 888 (11th Cir. 2008), not a cognizable § 2255 claim (i.e., not a showing that his constitutional rights were violated).

be taken in good faith. Thus, in forma pauperis status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this  29th  day of June, 2010.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA